O'CONNOR v. MARCH AUTOMATIC IRRIGATION CO.

1. PRINCIPAL AND AGENT—ORAL CONTRACT—QUESTION FOR JURY.

In an action by a sales agent on an oral contract for commissions on sales, whether the commissions were payable as soon as defendant received and accepted the orders, as claimed by plaintiff, or whether they were payable only when the customers had remitted in full, as claimed by defendant, held, properly submitted to the jury.

2. EVIDENCE—INSTRUCTIONS—PRESUMPTION THAT LETTER MAILED WAS RECEIVED.

In submitting to the jury an issue as to whether plaintiff received a letter, a copy of which was introduced in evidence, which defendant testified was mailed to plaintiff, a requested instruction that "where a letter is deposited in the United States mail addressed to a person at his place of residence, there is a presumption of law that such letter is received by the person to whom it is addressed," should have been given.

3. CONTRACTS—CONSTRUCTION—AMBIGUOUS CONTRACT INTERPRETED BY JURY.

Where a contract was ambiguous, its construction should have been determined as a question of fact by the jury, under proper instructions, rather than as a question of law by the court.

4. SAME—WHEN CONSTRUED BY COURT AND WHEN BY JURY.

Where a contract is to be construed by its terms alone, it is the duty of the court to interpret it; but where its meaning is obscure and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury, under proper instructions.

5. SAME—CONSTRUCTION OF PARTIES CONTROLLING.

Where the parties to a sales contract definitely placed a meaning upon the word "sale," as used therein, thereby determining that the commission thereon was not due

¹Agency, 2 C. J. § 730; ²Evidence, 22 C. J. § 36; Trial, 38 Cyc. p. 1703, ³Contracts, 13 C. J. § 997; 6 R. C. L. 862; 2 R. C. L. Supp. 234; 4 R. C. L. Supp. 448; 5 R. C. L. Supp. 374; 6 R. C. L. Supp. 416; 7 R. C. L. Supp. 204; ⁵Id., 13 C. J. § 517.

until the purchaser had remitted in full, the trial judge was in error in placing thereon another and different construction.

6. PRINCIPAL AND AGENT—RIGHT TO REJECT ORDERS MAY NOT BE EXERCISED ARBITRARILY.

A provision in a sales contract that defendant would not be liable for commissions on sales until it had received its pay from the purchaser should not be construed to mean that merely for its own convenience or without just cause the defendant could cancel or neglect to fill *bona fide* orders procured by its agent and accepted by it, even though the filling of such orders would result in financial loss to it, since as matter of law it had no right to arbitrarily deprive him of his commission.

7. EVIDENCE—TESTIMONY AS TO CREDIT FOR ORDERS INADMISSIBLE ON QUESTION OF COMMISSIONS DUE ON CONSUMMATED SALES.

In an action by a sales agent for commissions claimed to be due, where commissions were payable only on consummated sales, it was prejudicial error to receive testimony as to credits given plaintiff in a contest among defendant's salesmen, in which orders were credited regardless of whether they were later canceled.

Error to Muskegon; Vanderwerp (John), J. Submitted January 18, 1928. (Docket No. 138.) Decided April 3, 1928. Rehearing denied June 5, 1928.

Assumpsit by Herman O'Connor against the March Automatic Irrigation Company for commissions under a sales contract. Judgment for plaintiff. Defendant brings error. Reversed.

*Alexis J. Rogoski* and *Lou L. Landman,* for appellant.

*Clare J. Hall,* for appellee.

NORTH, J. The plaintiff in this case was employed by the defendant, a Michigan corporation, as a sales agent. Plaintiff's services as such were first rendered

---

⁶Agency, 2 C. J. § 446; ⁷Appeal and Error, 4 C. J. § 2953.

as a subagent in the State of Texas, beginning February 5th or 6th, 1925, and extending over a period of about three months. Thereafter, from May 4, 1925, until April 1, 1926, he was engaged as one of defendant's sales agents in the State of Ohio. He brought this suit to recover from the defendant compensation which he claims he earned while so employed. The defendant asserted the plaintiff had been paid in full, and further, that, because of certain overpayments, and because of certain damage the defendant had sustained by reason of fraud and misrepresentations of the plaintiff, the plaintiff was indebted to the defendant. At the conclusion of the proofs, the trial judge directed the jury to find in favor of the plaintiff in so far as the controversy arose out of his services in the State of Ohio, the amount of such recovery being fixed by the court in the sum of $1,582.94. In so far as the claim arose out of plaintiff's services rendered in the State of Texas, it was submitted to the jury, which determined that the plaintiff was entitled to recover $410 for this item. The verdict rendered in favor of the plaintiff and against the defendant was in the total sum of $1,992.94. Judgment was entered for the plaintiff in this amount and the defendant has appealed.

It is the claim of the plaintiff that the contract between himself and the defendant for services in the State of Texas was wholly verbal, and that by its terms the commissions on the respective sales were earned by him and fixed in amount *as soon as the defendant received and accepted orders secured by the plaintiff.* The defendant agrees that the arrangement between the parties was oral but contends that, in consummating the same, the oral contract was made to conform to the terms of the printed contract which the defendant used in employing its agents generally. This printed contract provided that, except as other-

wise specifically stated in the contract (which was not done in plaintiff's contract), commissions were to be paid to the agent only *"when the customer had remitted for the sale in full."* The plaintiff's commission in the Texas territory was to be 17% of his sales, with an advancement for expenses. The question was, When were his commissions payable? Under plaintiff's theory and claim as to the terms of his Texas employment, there was due him $410; but nothing was due him incident to his operations in this territory under defendant's claim as to the terms of this oral contract. The defendant moved the court to direct a verdict in its favor. This was denied and this phase of the case submitted to the jury. We have given the record careful consideration touching this issue, and are of the opinion that the controversy as to what were the terms of the oral contract clearly presented an issue of fact, and that it was proper to submit its determination to the jury.

Incident to this phase of the case, the defendant requested the court to charge the jury as follows:

"Where a letter is deposited in the United States mail addressed to a person at his place of residence, there is a presumption of law that such letter is received by the person to whom it is addressed."

It was the defendant's claim that it had mailed a letter to plaintiff "which confirmed our verbal understanding," and which corroborated the defendant's claim as to the terms of the Texas agency. A copy of this letter was received in evidence; but the plaintiff testified he did not recollect receiving the letter. In submitting this issue to the jury the requested charge should have been given; but, since the case must be remanded for a new trial on other grounds, we need not here consider the question as to whether the trial judge's omission to give the requested

charge was prejudicial to the extent that, standing alone, it would constitute reversible error.

In so far as the plaintiff represented the defendant as a sales agent in the State of Ohio, the agency contract was reduced to writing. It is unnecessary to quote the contract in full. By its terms the defendant company appointed the plaintiff sales manager of the company's products within and for the State of Ohio, beginning May 4, 1925. Nowhere in the contract is the plaintiff given the exclusive agency in this territory, but in some of the correspondence the defendant refers to plaintiff as its "State manager." The contract provided:

"The company hereby reserves the right to refuse any order mailed to them, which is undesirable for any reason whatsoever. No sales bind the company until they are accepted. The company agrees to fill all such orders with all practical dispatch," etc.

Also:

"This contract is to be in force for the period of one year providing you adhere to all the rules and regulations and personally produce a minimum of $1,500 as per sales price of the company's goods each month. Your failure to do so automatically cancels this contract without notice to you."

After the signatures the following appears:

"Clause No. 18 Remuneration.
Expenses paid not charged up $50 per wk.
Salary—$120 per month.
Commission—4% of net sales providing volume exceeds $1,500 per mo.
Bonus—Per Schedule below."        (Schedule follows.)

There is no controversy about the payment of plaintiff's expenses and salary as provided in the contract; but the controversy arises over the amount of commissions to which plaintiff was entitled, and also to what extent he should have received the bonus from month to month. With the full knowledge and consent

of the plaintiff two other subagents were placed in the Ohio territory. In the main their contracts were similar to the plaintiff's with the exception that their compensation was different, and each contract had written thereon underneath the provision that the territory consisted of the State of Ohio the following parenthetical expression: "(Under H. O'Connor.)" The plaintiff claimed and the trial court held that plaintiff was entitled not only to the commission on his own orders from the Ohio territory but that he was also entitled to commission on the orders secured by the two subagents each month when *the total sales of the three* exceeded $1,500. It was claimed by the defendant that the plaintiff was not entitled to the 4% commission unless his *personal* sales for the current month exceeded $1,500. The president of the defendant company testified that the plaintiff received 4% overwriting on the entire sales of the Ohio territory each month when plaintiff's personal volume of sales exceeded $1,500. Thus it seems to be agreed by these parties that under certain conditions plaintiff was to receive 4% commission on all sales made during a given month in the Ohio territory; but they disagree as to the terms of the contract fixing these conditions. There is no other provision in the contract which specifically refers to clause No. 18 or which renders at all definite or certain the meaning of the expression "Commission—4% of net sales providing volume exceeds $1,500 per mo." This provision is ambiguous, and its meaning and intent may be in accord with the contention of either of these parties so far as can be ascertained from the face of the contract. Its construction not only controls plaintiff's right to commissions but likewise his right to share in the monthly bonus. Under the record of the case, if the plaintiff's construction is adopted he will be entitled to the commission and the monthly bonus as was held by the

trial court; but under defendant's claim and theory the plaintiff could not recover for these items. Because the contract is ambiguous its construction in this particular should have been determined as a question of fact by the jury under proper instruction from the court. The proper rule for determining the construction of a contract has been stated as follows:

"Where a contract is to be construed by its terms alone, it is the duty of the court to interpret it; but where its meaning is obscure and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury, under proper instructions." 6 R. C. L. p. 862, and cases cited.

See, also, *Geoghegan Sons & Co.* v. *Arbuckle Bros.*, 139 Va. 92 (123 S. E. 387, 36 A. L. R. 399).

The plaintiff also claimed and the court held that plaintiff's commissions under the Ohio contract were earned as soon as the orders were received and accepted by the defendant; but the defendant contended that these commissions were not due to the plaintiff until the one to whom the products were sold had made payment therefor to the defendant. Thus it became a controverted issue as to what, under this contract, constituted a "sale" in the sense that the plaintiff would be entitled to receive his commission. Relative to this, the trial judge said:

"Now, it seems in this case there was some of these orders that were accepted in writing. On some, the goods were shipped and not paid for. Some were canceled by the defendant long after their receipt, after the plaintiff's commission had been earned. It is my opinion that the undisputed evidence in the case, as I construe the contract, entitles the plaintiff to a bonus and commission for sales or orders obtained by the three men, the plaintiff and the two subagents in Ohio, covering all orders except those containing the statement 'Subject to change of customer,' and which last mentioned orders are not, by the undisputed evi-

dence, shown to have been accepted or filled. Now, those orders are out of the case."

It is difficult to adopt the foregoing construction or meaning of the word "sale" as used in this contract, because of the undisputed proof that the parties themselves placed another and different construction thereon, and their construction should control. The plaintiff's Ohio contract became effective May 4, 1925. The two contracts of the Ohio subagents took effect June 6, 1925. At the end of the first month there was trouble about settling commissions with one of the subagents; and the president of the defendant company wrote plaintiff on July 7, 1925, as follows:

"Mr. Brooks (a subagent) informed me, yesterday, that you stated to him that he would receive a full cash settlement on every *bona fide* order and sale that he made during the month, and that such settlement was to be at the end of every month. I do not see why you made the statement, as I have never found that you wilfully misrepresented facts before. But, you certainly must understand that settlement of salesmen commission is based on the settlement to us by the customer, on the sale. I have carefully gone over this before, and I was sure that you understood the matter, as do our other salesmen."

To this letter the plaintiff replied July 9, 1925, as follows:

"Regarding Mr. Brooks and his commissions, will say, I am sure there must have been a misunderstanding, as of course I never told him that you would pay an agent all his commissions at the close of every month, otherwise I would have asked you for the back commissions due me. I regret that he understood it that way for I think he is a good man for us. My brother here understands it as I do, that you will advance the weekly allowance and pay the balance of their commissions *when you have received your pay from the customer.*"

Since these parties at the very outset clearly and

definitely placed a meaning upon the word "sale" which, with the exception of money advanced to meet expenses, did not entitle the agent to demand his commission until the defendant received its pay from the purchaser, we are bound to accept such construction as proper and binding upon the parties. *McIntosh* v. *Groomes*, 227 Mich. 215. The failure to do this in the trial court was prejudicial error and enabled the plaintiff to recover commissions incident to orders which, without fault on the defendant's part, were never filled, or at least orders for which the defendant never received pay. The foregoing holding should not be construed to mean that merely for its own convenience or without just cause the defendant could cancel or neglect to fill *bona fide* orders procured by the plaintiff and accepted by the defendant, even though the filling of such orders would result in a financial loss to the defendant. As a matter of law, the defendant had no right to arbitrarily deprive the plaintiff of his commission. 1 Mechem on Agency (2d Ed.), § 1536; *Parker* v. *Walker*, 86 Tenn. 566 (8 S. W. 391). The defendant was bound by its contract "to fill all such (accepted) orders with all practical dispatch." It was required to exercise diligence and good faith in its efforts to fill and collect the pay on all orders which it accepted from the plaintiff; but so long as the defendant proceeded "with all practical dispatch" and in good faith to complete the contracts arising from plaintiff's orders taken in the Ohio territory, the latter was not entitled to his commissions thereon until the ·customer paid the purchase price.

The remaining question presented by the assignments of error which merits consideration is whether prejudicial error was committed by receiving the testimony offered by the plaintiff incident to certain prize contests conducted by the defendant among its salesmen. The plaintiff claimed this testimony was

material and relevant because it would disclose that certain sales were credited in these contests to the plaintiff by the defendant on which sales the defendant at the trial denied the plaintiff's right to recover commission. The record discloses that the number of points each salesman received in these contests depended upon his "total week's business" as indicated by the orders he sent in, regardless of the fact that some of these orders might be canceled after the contest period, or that the purchase price thereof might not be paid by the customer. In view of the construction hereinbefore placed upon this contract, it is evident that the testimony relative to "orders" credited to the plaintiff in these contests cannot be held to be competent proof of consummated "sales" such as would entitle the plaintiff to his compensation, and we think receiving this testimony was prejudicial error.

Because of the errors hereinbefore indicated, the judgment must be reversed and the case remanded for a new trial. The appellant will have costs of this court.

Fellows, Wiest, Clark, McDonald, and Sharpe, JJ., concurred.

The late Chief Justice Flannigan did not sit.

The late Justice Bird took no part in this decision.