HEWETT GROCERY CO. v. BIDDLE PURCHASING CO.

1. ATTORNEY AND CLIENT—PRESUMPTION OF AUTHORITY—REPUDIATION OF APPEARANCE.

An attorney-at-law is presumed to have authority to represent a party litigant for whom he appears and when a party denies the authority he must proceed promptly and unequivocally to repudiate the appearance and to permit no more acts thereunder.

2. APPEARANCE—GENERAL APPEARANCE—EFFECT—INTENT.

When an attorney enters a general appearance in a cause, he submits his client to the jurisdiction of the court whether or not he intended so to do.

3. ATTORNEY AND CLIENT—MERCANTILE AGENCY—NOTICE OF APPEARANCE TO CLIENT.

Action of attorney in entering a general appearance, advising his client of such action, filing an answer and proceeding to trial of case before a jury on behalf of defendant bound client where attorney was regularly employed through a mercantile agency.

4. APPEAL AND ERROR—QUESTIONS REVIEWABLE—PRESENTATION OF QUESTIONS TO TRIAL COURT.

In action by client of purchasing agency against such agency on a contract, defendant's contention that plaintiff's pleadings and proofs are defective upon the point of minimizing damages, a question not raised during the trial, not presented to the lower court upon motion for new trial, nor assigned as error upon appeal, may not be considered by Supreme Court (Court Rule No. 66, § 3 [1933]).

5. SAME—QUESTIONS REVIEWABLE—AFFIRMATIVE DEFENSES—PLEADING.

Supreme Court will not consider defendant's claim that plaintiff's cause of action was barred by the statute of limitations where such claim was not presented to the lower court nor pleaded as an affirmative defense as required by court rule (3 Comp. Laws 1929, § 13976; Court Rule No. 23, § 3 [1933]).

6. COMPROMISE AND SETTLEMENT—BONA FIDE CLAIM WITH COLOR OF RIGHT.

A *bona fide* claim with a color of right is sufficient to sustain a compromise although there be in fact no right, so long as the party asserting it does not know he has no right and acts in good faith.

7. SAME—CONSIDERATION.

*Bona fide* dispute as to amount of order of jelly, arising after it had been shipped to plaintiff, was sufficient consideration for defendant's agreement to send orders for a part of the shipment of 12 times quantity plaintiff claimed was ordered if plaintiff would accept it.

8. JUDGMENT—RES JUDICATA.

A judgment to constitute a bar to a claim in a subsequent action must be rendered upon the merits upon the same matter in issue and between the same parties or their privies.

9. SAME—RES JUDICATA—SCOPE OF ESTOPPEL—SAME DEMAND.

A judgment on the merits constitutes an absolute bar to a subsequent action on the same claim or demand between the same parties and their privies not only as to every matter which was offered and received to sustain or defeat the claim or demand but also as to any other admissible matter which might have been offered for that purpose.

10. SAME—RES JUDICATA—SCOPE OF ESTOPPEL ON DIFFERENT DEMAND.

A judgment in a prior action operates as an estoppel in subsequent action on different claim between the same parties and their privies only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered.

11. SAME—SET-OFF.

A set-off may or may not be pleaded, at the election of defendant, and if not pleaded the right to sue upon it as an independent cause of action or rely upon it in defense to another action by the same plaintiff is not affected or impaired by a judgment against the defendant.

12. SAME—RES JUDICATA—CONTRACTS—SET-OFF.

In action by grocery company against purchasing agency for breach of contract to procure orders so as to dispose of surplus stock of jelly ordered through defendant, judgment for defendant in its prior action against plaintiff on an account stated for services rendered subsequent to those incident to jelly transaction was not *res judicata* of defendant's liability in plaintiff's action as entirely different causes of action were involved.

13. CONTRACTS—CONSTRUCTION.

When written documents are unequivocal, their construction is for the court.

14. SAME—CONSTRUCTION—AMBIGUITY—QUESTION FOR JURY.

Rule that the interpretation of written instruments is for the court does not apply when the writing is ambiguous and must be solved by extrinsic unconceded facts as it is then a question of fact or mixed question of law and fact, for the jury.

15. SALES—AMBIGUITY IN CONTRACT RELATIVE TO JELLY—WHOLESALE GROCERY TRADE—EVIDENCE—QUESTION FOR JURY.

In action by grocery company against purchasing agency for breach of contract to assist in disposal of excess of jelly over plaintiff's order reading "600 cases 5# tins, pure fruit jelly, at 5.75 per case" shipped after acknowledgment reading "600 cases 12–#5 tins pure fruit jelly $5.75" had been made of order by defendant, interpretation of contract was for jury in view of testimony that in the wholesale grocery trade there is not any stated number of cans in a case.

Appeal from Chippewa; Runnels (Herbert W.), J. Submitted April 6, 1939. (Docket No. 43, Calendar No. 39,980.) Decided June 6, 1939.

Action by Hewett Grocery Company, a copartnership, against Biddle Purchasing Company, a New York corporation, for damages for breach of contract in sale of goods. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Hudson & Coates,* for plaintiff.

*James J. Fenlon* (*John W. Shine* and *George D. Haller,* of counsel), for defendant.

SHARPE, J. This action involves an appeal from a judgment for plaintiff in a law action tried before a jury. The facts appear to be as follows. In the spring of 1930, the Hewett Grocery Company of Sault Ste. Marie was a client of the Biddle Purchasing Company. Plaintiff company having a prospect of furnishing a considerable amount of food stuffs to the Pittsburg Supply Company communicated this prospect to the Biddle Company and received special quotations on various articles. Under date of April 10, 1930, plaintiff company instructed the Biddle Company to enter its order for "600 cases 5# tins, pure fruit jelly, at $5.75 per case." When this

order was received by the Biddle Company, plaintiff was notified that the order would have to be made up specially. On April 21, 1930, the order was placed by the Biddle Purchasing Company with Peter G. Slaughter Company, the maker, and was acknowledged by defendant company as follows: 600 cases 12–#5 tins Pure Fruit Jelly $5.75.

On May 5, 1930, plaintiff company received an invoice from the maker stating the amount which had been shipped. Upon receipt of this notice plaintiff company wired the shipper to stop the car en route. The next day plaintiff company wrote a letter to the Biddle Purchasing Company in which it admitted that the original order read: "600 cases 5# tins Pure Fruit Jelly," but claimed that, "This order was intended to read: 600 only #5 tins." Plaintiff company also told the Biddle company that five-sixths of the order would have to be returned to the maker unless the latter had other customers to which part could be diverted, or unless the maker would make a special price, in which case plaintiff would undertake to resell it. In reply to this letter defendant offered to assist plaintiff in its efforts to resell the merchandise, also stating, "We, on our part, will be very glad to bring the matter to the attention of such clients as we have within a convenient radius of Saulte Ste. Marie." On June 24, 1930, the maker, Peter G. Slaughter Company, wrote plaintiff company threatening legal action for collection of the account. On June 30, 1930, defendant wrote plaintiff that the maker had agreed to accept deferred payments.

In the fall of 1936, defendant company sent a "statement of account" to plaintiff company for service charges. In reply thereto plaintiff company wrote as follows: "The balance of the accounts does not seem to be in dispute," but also made claim that

when the fruit jelly was ordered in 1930, it received 12 times its proper order; that it refused to accept the shipment until defendant company assured them that it would procure orders for most of the shipment, which it failed to do; that after selling 285 cases it had 315 cases on hand; and that defendant company was responsible for the loss, but proposed that if defendant company would waive its claim for $370.31, the amount which defendant claimed due it at that time, the plaintiff company would release its claim of $1,732.50 for damages on account of the jelly shipment. Defendant company refused to accept plaintiff's offer and took judgment for the amount of its claim, $425.80. The judgment was paid and plaintiff company immediately began the present action, garnisheeing the proceeds of the prior judgment in the hands of the attorney for Biddle Purchasing Company.

Subsequently, defendant company engaged the services of attorney Francis T. McDonald, who entered a general appearance, filed an answer and proceeded to the trial of the cause before a jury which rendered a verdict in favor of plaintiff in the sum of $1,732.50. In August, 1937, defendant company filed a motion to vacate the judgment and grant a new trial. This motion was based upon the claim that McDonald who appeared as attorney for defendant company was not authorized to enter a general appearance in the cause or have the defendant company submit itself to the jurisdiction of the court. This motion was denied and defendant appeals.

The retention of McDonald as attorney for defendant company was brought about by letter from the Wilber Mercantile Agency in which the letter of March 20, 1937, states:

"We hope that you are in position to take this matter up for us at once. * * * In the event you

are not in position to handle this promptly will you please return the matter to us.''

The next communication received by McDonald from this agency under date of March 30, 1937, reads as follows:

''Will you please take the necessary steps to dispose of the suit brought against our client? In view of the inclosed copy of the order, we do not think you will have any difficulty in this respect.''

This letter also contained a postcript in ink reading as follows:

''Please see debtor's attorneys and attempt to have this suit withdrawn in view of this order.''

On April 5, 1937, McDonald answered the above letter as follows:

''I have prepared and filed an answer in the attachment suit and ought to be able to get a dismissal of the case at the May term of court. I inclose herewith a copy of the answer.''

It appears that in the letters received from the Wilber Mercantile Agency by McDonald no instructions were given as to the procedure McDonald was to follow in handling the legal affairs of defendant company.

In *August* v. *Collins,* 265 Mich. 389, we said:

''It is a universal rule that an attorney-at-law is presumed to have authority to represent a party litigant for whom he appears, 6 C. J. p. 631, when a party denies the authority he must proceed promptly and unequivocally to repudiate the appearance and to permit no more acts thereunder.''

See, also, *Corbitt* v. *Timmerman,* 95 Mich. 581 (35 Am. St. Rep. 586).

In *Union Guardian Trust Co.* v. *Grevnin,* 264 Mich. 358, we held that when an attorney entered a general

appearance in a cause, he submitted his client to the jurisdiction of the court and that whether he intended to do so is of no importance.

See, also, *Najdowski* v. *Ransford*, 248 Mich. 465; *Hightower* v. *Detroit Edison Co.*, 262 Mich. 1 (86 A. L. R. 509).

In *Brown* v. *Spiegel*, 156 Mich. 138, we said:

"This stipulation comes within the general rule that the attorney has power, without express authority, to bind his client by all acts necessary or incidental to the prosecution or management of the suit which affect the remedy only, and not the cause of action."

The record shows that attorney McDonald in his amended answer to plaintiff's declaration defended upon the theory that the matters involved in this suit are *res judicata* because of the former judgment rendered against the plaintiff in this suit and in favor of the defendant, and in which suit plaintiff failed to make any claim of offset against the claim of the defendant; and because there was no consideration for the voluntary offer of the defendant to help sell part of the jelly shipped to the plaintiff. These defenses were also raised by McDonald in this motion for a directed verdict at the conclusion of the trial.

From the authorities above-cited, it is our opinion that defendant company is bound by the actions taken by its attorney. He was regularly employed and advised his client that a general appearance had been entered in its behalf.

Defendant company appeals from the order denying a new trial and contends that it never authorized McDonald to enter a general appearance; that plaintiff's pleadings and proof are defective upon the point of minimizing damages; that plaintiff is estopped from looking to defendant company upon

the alleged disposal contract because of its subsequent dealings with the manufacturer; that plaintiff's cause of action was barred by the statute of limitations; that no legal consideration was pleaded or proved; that the subject matter of the suit was *res judicata* in the prior judgment on the account stated; and that the interpretation of the original jelly contract was a matter for the court.

In regard to defendant's contention that plaintiff's pleadings and proof are defective upon the point of minimizing damages, the record before us shows that this question was not raised during the trial, was not presented to the lower court upon the motion for a new trial, nor assigned as error upon appeal.

Court Rule No. 66, § 3 (1933) reads as follows:

"No bill of exceptions or case shall be signed unless accompanied by such statements of reasons and ground of appeal, and no errors shall be considered by the Supreme Court that are not included in such statement."

Under the above rule, we may not consider defendant's claim in this regard, nor may we consider defendant's claim that plaintiff's cause of action was barred by the statute of limitations.* Such claim was not presented to the lower court. Under Court Rule No. 23, § 3 (1933), the statute of limitations is an affirmative defense and must be pleaded. It was not so pleaded in this case.

It is next urged by defendant company that there was no consideration running to defendant company for its alleged agreement to dispose of a part of the jelly, while plaintiff contends that there was a *bona fide* dispute as to the quantity of jelly ordered and the settlement of such dispute is ample consideration for a new contract.

---

* See 3 Comp. Laws 1929, § 13976 (Stat. Ann. § 27.605).—REPORTER.

In *Gates* v. *Shutts*, 7 Mich. 127, 133, the court said:

"A *bona fide* claim, with a color of right, although there be in fact no right, so long as the party asserting it does not know he has no right, and acts in good faith, is sufficient to sustain a compromise; for a party may buy his peace in a case in which he knows there is no right against him."

In *Perkins* v. *Hoyt* (syllabus), 35 Mich. 506, the court held:

"A difficulty having arisen in ascertaining the quantity of logs embraced in a written contract of sale, in the manner provided for by the contract, this very difficulty would be a sufficient consideration to support a new arrangement as to the manner of determining such quantity."

In *First National Bank of Ann Arbor* v. *Holmes*, 213 Mich. 41, 60, the court said:

"There was undoubtedly some dispute between the cashier and defendant Freeman, but if there was a *bona fide* settlement of the matter in dispute that would furnish a valid consideration for the note."

In the case at bar, the record shows that when the car containing the fruit jelly was on the tracks at Sault Ste. Marie, there was a dispute as to the amount of the order and defendant company agreed that if plaintiff would accept the car, it would send orders for a part of the consigned goods; in our opinion there was such a *bona fide* dispute as would support a consideration.

Defendant company next contends that the subject matter of this suit was *res judicata* in the prior judgment on the account stated. The record shows that defendant company had a claim against plaintiff for charges running from September, 1934, through November, 1935, less certain credits. The amount of this claim was approximately $400. It is the claim

of plaintiff that the subject matter in the former suit involves service charges during the years of 1934 and 1935, while the subject matter in this suit involves an order given in April, 1930; and that plaintiff company had a right to set this matter up as a defense in the former suit, but that it was not required to do so.

The general rule of *res judicata* may be found in *Tucker* v. *Rohrback*, 13 Mich. 73, where we said:

"That a judgment to constitute a bar to a claim in a subsequent action, must be rendered upon the merits, upon the same matter in issue, and between the same parties or their privies, is unquestionable."

In *Cromwell* v. *County of Sac*, 94 U. S. 351, 353, the court said:

"There is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * *

"But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered."

See, also, *MacKenzie* v. *Union Guardian Trust Co.*, 262 Mich. 563; 88 A. L. R. 574; *Kubiak* v. *Briggs Manfg. Co.*, 286 Mich. 329.

In 15 R. C. L. p. 972, it is said:

"It is generally held that a set-off may or may not be pleaded, at the election of the defendant; and if not pleaded, the right to sue upon it as an independent cause of action, or to rely upon it in defense to another action by the same plaintiff, is not affected or impaired by a judgment against the defendant."

In our opinion the present case involves an entirely new and distinct cause of action from that embraced in the former suit. Plaintiff may not be estopped from asserting his claim.

Defendant also urges that the interpretation of the original jelly contract was a matter for the court and should not have been submitted to the jury. It is conceded that when written documents are unequivocal their construction is for the court.

In 64 C. J. p. 363, § 353, it is stated:

"However, it is generally held that the rule that the interpretation of written instruments is for the court does not apply where the writing is ambiguous and must be solved by extrinsic unconceded facts, and construction of the writing is then a question of fact, or mixed question of law and fact, for the jury."

In *O'Connor* v. *March Automatic Irrigation Co.*, 242 Mich. 204, we said:

"The proper rule for determining the construction of a contract has been stated as follows:

" 'Where a contract is to be construed by its terms alone, it is the duty of the court to interpret it; but where its meaning is obscure and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury, under proper instructions.' 6 R. C. L. p. 862, and cases cited."

In the case at bar, the order read: "600 cases 5# tins." The acceptance read: "600 cases 12–

#5 tins pure fruit jelly $5.75." The record contains the following testimony:

"In the wholesale grocery trade there is not any stated amount as to the number of cans in a case. They vary—six, twelve, one, or twenty-four. The number of cans is determined by the way it is ordered. That could be interpreted to mean one can."

From the above testimony, the order could be interpreted to mean one of several different amounts. The order was ambiguous and the trial court was not in error in submitting the interpretation of the contract to the jury.

The judgment of the lower court is affirmed, with costs to plaintiff.

Butzel, C. J., and Wiest, Bushnell, Potter, Chandler, North, and McAllister, JJ., concurred.