D'AVANZO v WISE & MARSAC, PC

Docket No. 177756. Submitted May 15, 1996, at Detroit. Decided April 25, 1997, at 9:40 A M. Leave to appeal denied, 456 Mich 864.

Jerry D'Avanzo brought an action in the Wayne Circuit Court against Wise & Marsac, P.C., his former employer, alleging breach of contract and misrepresentation after the defendant's group disability insurer denied the plaintiff's claim for benefits for a disability that occurred after separation from employment but within the period for which the defendant, in the severance agreement, agreed to "pay [the plaintiff's] salary . . . together with all insurance and other benefits." The court, Sharon Tevis Finch, J., granted partial summary disposition for the plaintiff with respect to the claim of breach of contract and denied summary disposition of both claims for the defendant, which had argued that the claims are preempted by the Employee Retirement Income Security Act (ERISA), 29 USC 1001 et seq., or, if not preempted, that it had not breached the severance agreement because its obligation under the agreement was to continue to pay the insurer the plaintiff's disability insurance premiums and that it had done so. The defendant appealed by leave granted.

The Court of Appeals held:

1. The trial court erred in granting summary disposition for the plaintiff with respect to the claim of breach of contract. The terms of the severance agreement are ambiguous with respect to the defendant's obligation in terms of providing disability insurance or benefits to the plaintiff. The trial court should not have construed the agreement as a matter of law in the presence of a question of fact for the jury concerning the parties' intent with regard to the defendant's obligation to provide disability insurance or benefits.

2. The trial court correctly rejected the defendant's contention that the plaintiff's claims are preempted by the ERISA. Whether the plaintiff's state-law claims bear a relationship to an ERISA plan and therefore are preempted by the ERISA cannot be determined until the intent of the parties concerning the disability insurance or benefits promised in the severance agreement is resolved by the trier of fact.

3. The record is inadequate for meaningful review of the rest of defendant's claims on appeal.

Affirmed in part, reversed in part, and remanded.

1. Contracts — Judicial Construction — Ambiguities

The construction of a contract is generally a question of law determined by the court; however, where the meaning of a contract is obscure and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation is one of fact for the jury to decide as the trier of fact.

2. Labor Relations — Employee Retirement Income Security Act — Preemption.

The Employee Retirement Income Security Act (ERISA) does not preempt state laws or actions under state law whose effect on employee benefit plans that are subject to the ERISA are merely tenuous, remote, or peripheral (29 USC 1144[a]).

*Morris & Doherty, P.C.* (by *E. Michael Morris* and *Steven W. Samosiuk*), for the plaintiff.

*Brady Hathaway, P.C.* (by *Daniel J. Bretz*), for the defendant.

Before: Wahls, P.J., and Young and H. A. Beach[*], JJ.

Young, J. Defendant[1] was granted leave to file this interlocutory appeal of the trial court's orders denying defendant's motion for summary disposition and granting plaintiff's motion for partial summary disposition. We reverse in part, affirm in part, and remand.

This dispute arises from a severance agreement negotiated by plaintiff and defendant at the conclusion of plaintiff's employment. Plaintiff claims that defendant breached a contractual obligation (or alternatively, made a misrepresentation) concerning the

---

[*] Circuit judge, sitting on the Court of Appeals by assignment.

[1] During the course of litigation, defendant filed a third-party complaint against the UNUM Life Insurance Company. We use "defendant" to refer only to Wise & Marsac, P.C. There are no issues in this appeal concerning UNUM's third-party liability.

provision of long-term disability benefits referenced in the severance agreement. The core legal questions on appeal involve the closely related issues: (1) whether the severance agreement unambiguously created a separate contractual obligation on defendant's part to provide the disability benefit, (2) whether the severance agreement created only the obligation to provide plaintiff with benefits under defendant's long-term disability plan, and (3) whether the Employee Retirement Income Security Act (ERISA), 29 USC 1001 *et seq.*, preempts plaintiff's claims. We conclude that the agreement is ambiguous and that the preemption question cannot be determined until the intent of the parties concerning the disability benefit promised in the severance agreement is resolved by the trier of fact.

## I. FACTS AND PROCEEDINGS

Plaintiff is a former associate with defendant law firm, Wise & Marsac, P.C. Plaintiff's employment with defendant formally ended on April 1, 1991. On May 31, 1991, plaintiff and defendant negotiated a severance agreement that provided that defendant would "pay [plaintiff's] salary . . . together with all insurance and other benefits provided to associates of the Firm from April 1, 1991 through September 30, 1991, the severance period." Following plaintiff's separation, defendant continued to pay premiums on plaintiff's behalf to UNUM Life Insurance Company, defendant's long-term disability insurance carrier.

In October 1992, plaintiff filed a claim for disability benefits with UNUM, alleging that the disability arose on June 18, 1991, a date within the severance period. UNUM denied the claim, suggesting that plaintiff's

claim was not timely. When plaintiff inquired further, UNUM informed him that his coverage had ceased on April 1, 1991, when plaintiff ceased active employment with defendant. UNUM eventually credited defendant for the premiums paid on plaintiff's behalf for the period between April 1, 1991, and September 1, 1991.

Following UNUM's denial of his disability claim, plaintiff brought this action against defendant, claiming breach of contract and misrepresentation. Both parties moved for summary disposition. Plaintiff argued that he was entitled to partial judgment as a matter of law on the breach-of-contract claim. He argued that the severance agreement unambiguously required defendant to provide him with disability benefits irrespective of how defendant chose to obtain such benefits—through its group insurance carrier, UNUM, or otherwise. Defendant argued in response that it was entitled to summary disposition because plaintiff's claims were preempted by the ERISA, or if those claims were not preempted, that defendant did not breach the severance agreement. The trial court granted plaintiff's motion, but denied defendant's cross motion. From these orders, defendant appeals by leave granted by this Court.

## II. THE SEVERANCE AGREEMENT

Central to this dispute is the following paragraph of the severance agreement.

> 4. The Firm further will pay [plaintiff] in the usual twice a month intervals a salary . . . together with all insurance and other benefits provided to associates of the firm for the period between April 1, 1991 through September 30, 1991.

Each party has attached its own interpretation to the phrase "insurance and other benefits provided to associates of the firm."

### A. DEFENDANT'S INTERPRETATION

Defendant argues that, according to the clear language of the agreement, it agreed only to "pay" for the *same* benefits that defendant "pays" for the firm's associates. Defendant contends that it complied with this agreement by continuing to pay premiums for plaintiff on the disability policy that insures the firm's associates. Defendant further argues that plaintiff was denied coverage by the insurance carrier because he was ineligible for coverage under the policy language, not because defendant breached the severance agreement. Consequently, defendant suggests that plaintiff's claims are, in essence, a challenge to the *carrier's* reasons for denying disability coverage and, thus, are preempted by the ERISA.

### B. PLAINTIFF'S INTERPRETATION

By contrast, plaintiff contends that the severance agreement clearly obligated *defendant* to provide disability coverage from April 1 through September 30, 1991, and that the agreement does not specify the particular manner by which defendant was to satisfy this obligation. Consequently, plaintiff argues that the agreement did not expressly subject plaintiff to the terms of defendant's UNUM group policy. Inasmuch as the insurance company denied plaintiff's claim on the basis that plaintiff was *not* insured during the severance period, this fact establishes that defendant breached its promise to provide disability benefits to plaintiff during this period. In sum, plaintiff contends that his entitlement to a disability benefit is contrac-

tual only and entirely independent of defendant's UNUM group policy and the ERISA.

### III. THE CONTRACT LANGUAGE IS AMBIGUOUS

The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. *Goodwin v Orson E Coe Pontiac, Inc*, 392 Mich 195, 209; 224 NW2d 53 (1974), citing *McIntosh v Groomes*, 227 Mich 215, 218; 198 NW 954 (1924). Although the construction of the terms in a contract is generally a question of law for the court to determine, " 'where [a contract's] meaning is obscure and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury, under proper instructions.' " *Hewett Grocery Co v Biddle Purchasing Co*, 289 Mich 225, 236; 286 NW 221 (1939), quoting *O'Connor v March Automatic Irrigation Co*, 242 Mich 204; 218 NW 784 (1928) (citations omitted).

Hence, in the context of a summary disposition motion, a trial court may determine the meaning of the contract only when the terms are *not* ambiguous. *SSC Associates Ltd Partnership v General Retirement System of City of Detroit*, 192 Mich App 360, 363; 480 NW2d 275 (1991). A contract is ambiguous if the language is susceptible to two or more reasonable interpretations. *Petovello v Murray*, 139 Mich App 639, 642; 362 NW2d 857 (1984). In an instance of contractual ambiguity, factual development is necessary to determine the intent of the parties and summary disposition is inappropriate. *SSC Associates, supra*, p 363.

The trial court adopted plaintiff's interpretation of the disputed language. Yet, as noted above, both par-

ties have set forth reasonable interpretations of the same language. As such, we conclude that the disputed interpretations presented render the contract terms at issue ambiguous. Because this ambiguity creates a question of fact for the jury, the meaning of the disputed language cannot be construed as a matter of law. *Hewett, supra,* p 236; *SSC Associates, supra,* p 363. Therefore, we conclude that the lower court erred in granting summary disposition for plaintiff because factual development is necessary to ascertain the parties' intent. See *id.,* p 363.

### IV. ERISA PREEMPTION OVER STATE CLAIMS

Defendant also challenges the trial court's ruling that plaintiff's common-law claims of breach of contract and misrepresentation against defendant were not preempted by the ERISA. Because defendant's ERISA preemption argument would provide an independent basis for disposing of this case, we must now decide whether plaintiff's claims are preempted.

### A. THE SCOPE OF THE ERISA PREEMPTION

Section 514(a) of the ERISA, 29 USC 1144(a), provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in [29 USC 1003(a)] and not exempt under [29 USC 1003(b)]. This section shall take effect on January 1, 1975. [Emphasis supplied.]

The basic objective of the ERISA preemption is to avoid a multiplicity of regulation in order to permit national uniformity in the administration of employee

benefit plans. *New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins Co (NYBCBS)*, 514 US 645, 657; 115 S Ct 1671, 1677-1678; 131 L Ed 2d 695 (1995). Under § 514(a), a state law " 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Ingersoll-Rand Co v McClendon*, 498 US 133, 139; 111 S Ct 478; 112 L Ed 2d 474 (1990). "A state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Id.* A state law indirectly affects an ERISA plan if it produces "acute, albeit indirect, economic effects, by intent or otherwise, as to force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers." *NYBCBS, supra,* p 668. The phrase "relates to" has been broadly construed to preempt state common-law causes of action as well as state statutes. *Ingersoll-Rand, supra,* pp 139-140; *Pilot Life Ins Co v Dedeaux,* 481 US 41, 48; 107 S Ct 1549; 95 L Ed 2d 39 (1987).

Notwithstanding its breadth, the scope of the ERISA preemption is not without limits. *Ingersoll-Rand, supra,* p 139. Both the United States Supreme Court and the Michigan Supreme Court have rejected reading § 514(a) to include every possible relation to the ERISA. *NYBCBS, supra,* p 656 ("infinite relations cannot be the measure of pre-emption"); *Teper v Park West Galleries, Inc,* 431 Mich 202, 215-216; 427 NW2d 535 (1988) (holding that reference to an ERISA plan in order to calculate damages in a wrongful discharge claim did not preempt the state-law claim). State laws or state-law claims whose effect on employee benefit plans are merely tenuous, remote, or peripheral are

not preempted. *Shaw v Delta Airlines, Inc*, 463 US 85, 100, n 21; 103 S Ct 2890; 77 L Ed 2d 490 (1983); *Cromwell v Equicor-Equitable HCA Corp*, 944 F2d 1272, 1276 (CA 6, 1991).

For example, the ERISA does not preempt state laws generally regulating employee benefits that neither establish nor require an employer to maintain an employee benefit plan. *Fort Halifax Packing Co, Inc v Coyne*, 482 US 1, 11; 107 S Ct 2211; 96 L Ed 2d 1 (1987). Similarly, the ERISA does not preempt a state-law claim whose only relationship to the ERISA is predicated upon the method used in calculating the damages recoverable for claims that allow an amount that represents the loss of benefits that may have been provided under an ERISA plan. *Teper, supra*, pp 215-216; see also *Rozzell v Security Services, Inc*, 38 F3d 819, 822-823 (CA 5, 1994). This is especially true in cases where the judgment is awarded against the employer, rather than the plan or plan administrator. *Teper, supra*, pp 215-216; see also *Hill v Ford Motor Co*, 183 Mich App 208, 214; 454 NW2d 125 (1989).

### B. DO PLAINTIFF'S CLAIMS "RELATE TO" AN ERISA PLAN?

To establish preemption, defendant must prove that plaintiff's state-law claims bear a relationship to an ERISA *plan*.[2] *Fort Halifax, supra*, pp 7-8. However, the ambiguity of the language in the severance agreement

---

[2] The parties also dispute whether defendant's group disability policy through UNUM is an ERISA plan. The ERISA defines an "employee benefit plan" or "plan," in part, as "any plan fund, or program which [is] established or maintained by an employer . . . , to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) . . . disability . . . benefits . . . ." 29 USC 1002(1), (3). Thus, the UNUM group policy for defendant's associates is a plan subject to the ERISA.

precludes a determination whether a relationship exists. As stated above, the severance agreement does not specify the means by which defendant agreed to provide plaintiff disability benefits, and only plaintiff and defendant are parties to the severance agreement. Facially, the severance agreement does not specify that an ERISA *plan* was intended as a vehicle to provide plaintiff disability benefits. Compare *Fort Halifax, supra,* p 11 (state law does not relate to the ERISA if it does not require the maintenance or establishment of an ERISA plan). Thus, the express language of the agreement does not establish a *direct* relationship to an ERISA plan.

Defendant nonetheless maintains that the plaintiff's claims are indirectly related to an ERISA plan. Defendant argues that, irrespective of the parties' agreement, the recovery being sought by plaintiff establishes the link to an ERISA plan. Defendant contends that, because plaintiff's claims were precipitated by the denial of his disability claim, plaintiff is essentially seeking the recovery of an ERISA plan benefit. In support, defendant relies on *Cromwell, supra,* p 1272. In *Cromwell,* a health-care provider brought suit against a disability insurance carrier, claiming, *inter alia,* that the carrier breached an oral agreement to pay for services provided to the insured.[3] *Id.,* p 1275. The *Cromwell* court observed that the provider's claims

---

[3] In *Cromwell,* a health-care provider alleged that the insurance carrier provided oral assurances that the insured was covered for its services under the ERISA disability plan. *Cromwell, supra,* p 1275. The provider further alleged that in reliance on those assurances, it agreed to provide the insured services in exchange for the insured's agreement to assign the provider the right to receive payment directly from the carrier. *Id.* The carrier paid the provider for four months of care, but stopped paying after learning that, several years before, the insured ceased to be covered by the policy. *Id.*

essentially sought the recovery of benefits due the insured under the ERISA plan. *Id.*, p 1276. As such, the court reasoned that if the provider could sue for these benefits, it would not only affect the relationship between plan principals but also expand the scope of coverage beyond the plan's terms. *Id.*, p 1276. Consequently, the court held that the provider's claims were preempted. *Id.*

Unlike the *Cromwell* plaintiff, plaintiff here does not contest the reasons why his disability claim was denied by UNUM, nor does he allege that he is entitled to recover benefits under that policy. Compare *Hill, supra*, pp 214-215 (a contractual claim seeking benefits under a specific ERISA plan would be preempted). Instead, plaintiff argues that defendant breached its contractual obligation to provide the benefit in the first instance. Thus, the factual dispute regarding the specific nature of defendant's obligation under the severance agreement must first be resolved before defendant's preemption claim can be assessed.

Alternatively, defendant argues that plaintiff's claims relate to the ERISA because the amount of benefits provided by the UNUM policy must be referenced in calculating the plaintiff's damages, relying on *Cefalu v BF Goodrich Co*, 871 F2d 1290, 1294 (CA 5, 1989).[4] However, the damages generally recoverable

---

[4] In *Cefalu*, after the employer sold the plaintiff's division to another company, the plaintiff declined an option to work at the successor company and elected instead to operate a franchise from his former employer's company. *Cefalu, supra*, p 1292. In electing that option, he also agreed to accept pension benefits under a special deferred plan. *Id.* However, the plaintiff later sued his employer for additional pension benefits, alleging that his employer's agents orally assured him that he would receive the same benefits as employees who opted to work at the employer's successor company. *Id.* The Fifth Circuit Court of Appeals held that the plaintiff's claims related to, and thus were preempted by, the

for breach of contract are limited to the monetary value of the contract had the breaching party fully performed under it. *Kewin v Massachusetts Mutual Life Ins Co*, 409 Mich 401, 414-415; 295 NW2d 50 (1980). Here again, without knowing what the parties intended the obligation to be, it is unclear how plaintiff's alleged damages will be measured.

As the foregoing analysis illustrates, the record is insufficient to resolve the ambiguity concerning the means intended to supply plaintiff the benefit under the severance agreement. Therefore, the preemption issue cannot be resolved on the record before us, and the trial court properly denied defendant's motion for summary disposition.

## V. REMAINING ISSUES

Defendant appeals several issues that were raised, but not decided, below. First, defendant claims that the plaintiff's true claim is against UNUM for denial of coverage under the policy and that UNUM's decision should be reviewed for an abuse of discretion. Plaintiff responds that defendant's failure to provide

---

ERISA because the plaintiff conceded that he was seeking the pension benefits under the other plan, such that the calculation of damages required reference to the ERISA plan. *Id.*, p 1294. Unlike the *Cefalu* plaintiff, plaintiff here does not claim that he is eligible for additional benefits under the UNUM policy.

Nevertheless, assuming the only connection to the ERISA involves the use of the UNUM policy as a guide to calculate plaintiff's damages, this fact alone would not be a sufficient connection to support the ERISA preemption. For example, in *Rozzell*, a wrongful discharge case based on a retaliation theory, the Fifth Circuit Court of Appeals criticized reliance on *Cefalu's* dicta, stating that "this statement does not, and cannot mean that any lawsuit in which reference to a benefit plan is necessary to compute plaintiff's damages is preempted by ERISA." *Rozzell, supra,* p 822. The same argument was also rejected by our Supreme Court in *Teper, supra,* pp 215, 217.

benefits is the basis for his claims, not UNUM's denial of benefits. Second, defendant argues that plaintiff's misrepresentation count cannot be maintained as a matter of law, because a misrepresentation claim cannot be based upon a broken promise. Compare *Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976). Because plaintiff's misrepresentation claim revolves around ambiguous language in the severance agreement, there remain disputed issues of material fact regarding whether defendant made any false statement and whether plaintiff detrimentally relied on that statement.

This Court will not address an issue that was not decided below unless it is one of law for which all the necessary facts were presented. *Providence Hosp v Nat'l Labor Union Health & Welfare Fund*, 162 Mich App 191, 194-195; 412 NW2d 690 (1987). The record is inadequate for a meaningful review of these issues. Defendant will be free to raise these issues when this case returns to the trial court on remand.

We affirm the trial court's denial of defendant's motion for summary disposition, but reverse the order granting plaintiff's motion for partial summary disposition, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.