# Court of Appeals, State of Michigan

## ORDER

Stonecrest Building Company v Chicago Title Insurance Company

Docket No. 319841/319842

LC No. 2008-001055 CH

Amy Ronayne Krause
Presiding Judge

Kirsten Frank Kelly

Douglas B. Shapiro
Judges

The Court orders that the motion for reconsideration is GRANTED, and this Court's opinion issued April 7, 2015 is hereby VACATED. A new opinion is attached to this order.

Kelly, K. F., J., would deny the motion for reconsideration.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

JUL 2 1 2015
_____
Date

_____
Chief Clerk

# STATE OF MICHIGAN

# COURT OF APPEALS

STONECREST BUILDING COMPANY,

and

RICHARD J. SABLE,

      Plaintiffs-Appellees,

v

CHICAGO TITLE INSURANCE COMPANY,

      Defendant-Appellant.

UNPUBLISHED
July 21, 2015

No. 319841
Macomb Circuit Court
LC No. 2008-001055-CH

---

CHICAGO TITLE INSURANCE COMPANY,

      Plaintiff-Appellant,

v

STONECREST BUILDING COMPANY,

and

RICHARD J. SABLE,

      Defendants-Appellees.

No. 319842
Macomb Circuit Court
LC No. 2008-002153-CH

---

ON RECONSIDERATION

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and SHAPIRO, JJ.

PER CURIAM.

-1-

In these consolidated appeals,[1] Stonecrest Building Company (Stonecrest) and its president, Richard J. Sable, and Chicago Title Insurance Company (CTIC) appeal by right from the trial court orders that interpreted a personal guaranty entered into by the parties arising from several construction projects. We affirm in part and reverse and remand in part.

This case arises out of construction projects and contracts between Stonecrest and Stock Building Supply Company (Stock). Stonecrest was engaged in building several residential condominium projects. Stock contracted to furnish labor and materials for the project. This arrangement was evidenced by a Sales Agreement, entered into by Stonecrest and Stock on December 3, 2003. The Sales Agreement explicitly provided that Sable assumed no personal liability for sums due under the Sales Agreement.

In 2006 and 2007, Stonecrest began experiencing financial difficulties such that it was unable to meet its obligations to Stock and other contractors. Accordingly, on July 30, 2007, Sable executed the personal guaranty (Guaranty) that is the main subject of the instant litigation. The guaranty provides in relevant part:

> The undersigned, RICHARD J. SABLE, ("Guarantor"), in order to induce STOCK BUILDING SUPPLY, LLC, a Delaware limited liability company, ("Stock"), to extend credit to STONECREST BUILDING COMPANY, a Michigan corporation ("Stonecrest"), to accept a promissory note in the sum of Thirty Nine Thousand Two Hundred Four and 00/100 ($39,204.00) Dollars, and to forbear from commencing suit, does hereby unconditionally and absolutely guarantee to Stock, its successors and assigns, the full and prompt payment, when due, or all sums payable by Stonecrest to Stock pursuant to (a) the Promissory Note of even date executed and delivered by Stonecrest to Stock in the foregoing principal amount (the "Note"), and (b) the Sales Agreement dated December 3, 2003 between Stonecrest and Stock (the "Sales Agreement").

On the same date, the parties executed the referenced promissory note (Promissory Note) in the amount of $39,204.00.

In March 2008, Stock filed suit against Stonecrest and Sable for breach of contract under the Sales Agreement and the Guaranty. Also in March 2008, Stonecrest and Sable filed a separate lawsuit against Stock for declaratory relief seeking, among other things, a declaration that under the Guaranty, Sable was liable for only the Promissory Note and sums due under the Sales Agreement accruing after July 30, 2007. While these cases were not formally consolidated before the trial court, they were litigated together and were consolidated on appeal before this Court.

CTIC became involved in this litigation on behalf of homeowners who were sued as a result of Sable and Stonecrest's failure to pay contractors, subcontractors, suppliers, and laborers.

---

[1] *Stonecrest Bldg Co v Chicago Title Ins Co*, unpublished order of the Court of Appeals, entered January 15, 2014 (Docket Nos. 319841 & 319842).

CTIC reached a settlement on behalf of its insureds with various lien claimants. As part of its settlement with Stock, CTIC was assigned all of Stock's claims against Sable and Stonecrest.

On January 15, 2013, CTIC moved for summary disposition under MCR 2.116(C)(10), arguing that "Stonecrest materially breached the Sales Agreement by, among other things, failing to tender payment when due" and that, under the Guaranty, Sable was personally liable for this breach in the amount of $9,092,433.53. On August 13, 2013, the trial court issued a written opinion granting summary disposition in favor of CTIC in part, ruling that under the Guaranty, Sable was "only liable under the Guaranty for repayment of the July 30, 2007 Promissory Note and those sums accruing under the Sales Agreement on and after July 30, 2007." Following a subsequent hearing on October 30, 2013, the court clarified its opinion, ruling that Sable's liability "is limited to the sums for purchases from and after July 30, 2007 and interest and carrying charges to those obligations only[,]" i.e., that Sable was not personally liable for any obligations incurred prior to July 30, 2007.

After another hearing held December 19, 2013, the parties stipulated to entry of a judgment in favor of CTIC and against Sable in the amount of $51,154.69 "for labor and materials provided from and after July 30, 2007, inclusive of time price differential accruing on labor and material provided from and after July 30, 2007, costs and attorneys' fees." This stipulation included language providing that: "The parties do not waive, and expressly reserve, any right they may have, to seek appellate review of the Orders except that the amount of labor and materials from and after July 30, 2007 and the time price differential accruing on labor and materials provided from an after July 30, 2007 is not appealable nor subject to further review."

CTIC argues that the clear and unambiguous language of the Guaranty provides that Sable assumed personal liability for all sums owed by Stonecrest to Stock under the Sales Agreement, including all debts incurred prior to July 30, 2007. The trial court disagreed, essentially finding that the Guaranty unambiguously provided that Sable only assumed personal liability for the amounts that came due on or after July 30, 2007. After conducting a review de novo, we conclude that the Guaranty is ambiguous and, accordingly, reverse and remand.[2]

---

[2] This Court reviews de novo a trial court's grant of summary disposition under MCR 2.116(C)(10). *Ernsting v Ave Maria College*, 274 Mich App 506, 509; 736 NW2d 574 (2007). "When deciding a motion for summary disposition under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party." *Id.* at 509-510. All reasonable inferences are to be drawn in favor of the nonmoving party. *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010). "Summary disposition is proper under MCR 2.116(C)(10) if the documentary evidence shows that there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Ernsting*, 274 Mich App at 509. "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008). "A genuine issue of material fact exists when the record, giving the benefit of any reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ." *Ernsting*, 274 Mich App at 510. "The proper

"Contracts of guaranty are to be construed like other contracts, and the intent of the parties, as collected from the whole instrument and the subject-matter to which it applies, is to govern." *Comerica Bank v Cohen*, 291 Mich App 40, 46; 805 NW2d 544 (2010) (quotation marks and citation omitted). However, "a guaranty contract . . . is a special kind of contract" and must be strictly interpreted. *Bandit Indus, Inc v Hobbs Int'l, Inc*, 463 Mich 504, 512; 620 NW2d 531 (2001). Thus, "a court must approach with caution a claim that the parties have formed a guaranty contract." *Id*. "[A]ssumption of another's debt is a substantial undertaking, and thus the courts will not assume such an obligation in the absence of a clearly expressed intention to do so." *Id*.

Sable does not dispute the validity of the Guaranty nor his personal liability thereunder. That is, there is no question that the Guaranty is enforceable. There is similarly no question that Sable "clearly expressed" his intention to assume *some* personal liability under the Guaranty. Sable does not dispute that he was personally liable for the amount of the Promissory Note and the sums due under the Sales Agreement accruing on and after July 30, 2007. He merely seeks affirmance of the trial court's rulings. Thus, the question before us is whether Sable assumed personal liability for those debts incurred under the Sales Agreement prior to July 30, 2007.

> In interpreting a contract, this Court's obligation is to determine the intent of the parties. This Court must examine the language of the contract and accord the words their ordinary and plain meanings, if such meanings are apparent. If the contractual language is unambiguous, courts must interpret and enforce the contract as written. Thus, an unambiguous contractual provision is reflective of the parties' intent as a matter of law. [*In re Smith Trust*, 274 Mich App at 285 (quotation marks and citations omitted).]

By contrast, "[a] contract is ambiguous if the language is susceptible to two or more reasonable interpretations." *D'Avanzo v Wise & Marsac, PC*, 223 Mich App 314, 319; 565 NW2d 915 (1997). In such a situation, summary disposition is inappropriate because an ambiguity creates a question of fact, and this Court will remand for "factual development [] necessary to ascertain the parties' intent." *Id*. at 320.

The parties each contend that the Guaranty unambiguously evidences their advocated interpretation. CTIC's argument is based primarily on the sentence that reads that Sable "does hereby unconditionally and absolutely guarantee to Stock, its successors and assigns, the full and prompt payment, when due, of *all sums* payable by Stonecrest to Stock pursuant to . . . the Sales Agreement . . . ." (Emphasis added). However, Sable argues that the phrase "when due" unambiguously means that he was not providing a personal guaranty for those sums that were *already due* when the document was signed. He therefore argues that nowhere in the Guaranty is it "clearly expressed" that he agreed to assume personal liability for all sums owed by Stonecrest. *Bandit Indus, Inc*, 463 Mich at 512.

---

interpretation of a contract is a question of law that this Court reviews de novo." *In re Smith Trust*, 274 Mich App 283, 285; 731 NW2d 810 (2007).

We conclude, particularly in light of the special nature of a guaranty contract, that each party has presented a reasonable reading of the Guaranty. Thus, although each party asserts that its advocated reading is clear and unambiguous, we conclude that the document is ambiguous as to the scope of Sable's personal liability; specifically, if that liability extends to all sums owed or only those that came due on or after its July 30, 2007. Thus, the trial court's grant of summary disposition was inappropriate, *D'Avanzo*, 223 Mich App at 319, and we remand for further proceedings on the issue, including the admission and consideration of extrinsic evidence as necessary,[3] see *Zurich Ins Co v CCR & Co*, 226 Mich App 599, 604; 576 NW2d 392 (1997).

Our finding of ambiguity extends to the question of whether Sable is a guarantor of the time-price differential (i.e., interest) accruing on the pre-July 30, 2007 debt. If he were found liable for the time-price differential on the pre-July 30, 2007 debt but not the underlying principle, Sable could be liable in perpetuity for those time-price differential payments on a debt for which he was adjudged not liable. CTIC would likely have no incentive to settle the underlying debt (indeed, Stonecrest ceases to exist as a business) and, therefore, Sable could end his continuing liability only by paying off the underlying debt, an action which would render meaningless any finding that he did not guarantee it. See *Rector v McCarty*, 61 Ark 420; 33 SW 633 (1896). Notably, the Guaranty makes no mention of time-price differential and does not further define "sums payable." Accordingly, we conclude that the Guaranty is ambiguous as to payment of the time-price differential on the pre-July 30, 2007 debt. If it is ultimately determined that Sable has guaranteed the pre-July 30, 2007 debt, then it follows that he has guaranteed the differential charges as well. However, if it is determined that Sable is not liable for that debt, then the trial court shall make a determination, based on the Guaranty and relevant extrinsic evidence, whether the Sable's guarantee applies to those charges.

Sable also argues that the final judgment entered by the trial court operated to dismiss with prejudice any claims CTIC may have against Stonecrest under the Sales Agreement. We disagree.[4]

The final judgment in this case was stipulated to by the parties. MCR 2.504(A)(1)(b) provides that the "filing [of] a stipulation of dismissal signed by all the parties" shall be without prejudice "[u]nless otherwise stated in the notice of dismissal[.]" The final judgment in this case makes no reference to any claims against Stonecrest by CTIC being dismissed with prejudice. Accordingly, to the extent those claims were dismissed, it was done without prejudice. This outcome is supported by reading the rest of the final judgment in context. The parties clearly

---

[3] In light of our finding of ambiguity, we need not address the trial court's additional ruling regarding consideration. However, as adequate legal consideration in an element of a legally enforceable contract, *Calhoun Co v Blue Cross Blue Shield of Mich*, 297 Mich App 1, 13-14; 824 NW2d 202 (2012), neither party is precluded from challenging consideration in the proceedings on remand.

[4] Both the interpretation of court rules, *Al-Shimmari v Detroit Med Ctr*, 477 Mich 280, 287; 731 NW2d 29 (2007), and a court order, *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 460; 750 NW2d 615 (2008), involve questions of law reviewed de novo.

intended that the stipulation only regard Sable's personal liability for the Promissory Note and the sums incurred under the Sales Agreement on or after July 30, 2007. The parties also expressly stipulated that all appeal rights were preserved except as to those two issues, demonstrating their intent that the judgment did not foreclose, waive, or dismiss with prejudice any claims outside of those two limited damage issues.

In sum, we affirm the trial court order insofar as it held that Sable was personally liable for the amount of the Promissory Note and principle sums under the Sales Agreement that came due on or after July 30, 2007. We vacate the trial court's order insofar as it found that Sable was not personally liable on the principle due prior to July 30, 2007 or for the time-price differential charges on the pre-July 30, 2007 debt. As to those determinations, we remand to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Douglas B. Shapiro