[Cite as *Mid-Ohio Emergency Physicians, L.L.P. vs. Trinity Hosp. Twin City*, 2015-Ohio-4813.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| MID-OHIO EMERGENCY PHYSICIANS, LLP | JUDGES:<br>Hon. William B. Hoffman, P. J.<br>Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| -vs- | Case No. 2015 AP 03 0013 |
| TRINITY HOSPITAL TWIN CITY, et al. | O P I N I O N |
| Defendants-Appellants | |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Case No. 2013 CV 12 0868 |
| JUDGMENT: | Reversed and Remanded |
| DATE OF JUDGMENT ENTRY: | November 23, 2015 |


APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellee | For Defendant-Appellant Trinity |
| KEVIN M. NORCHI<br>STEVEN J. FORBES<br>NORCHI FORBES LLC<br>Commerce Park IV<br>23240 Chagrin Boulevard, Suite 210<br>Cleveland, Ohio 44122 | ROBERT R. STEPHENSON II<br>JAMES M. CARROTHERS<br>STEPHENSON, STEPHENSON &<br>CARROTHERS<br>206 West High Avenue<br>New Philadelphia, Ohio 44663 |

*Wise, J.*

**{¶1}** Defendant-Appellant Trinity Hospital Twin City ("THTC") appeals the decision of the Court of Common Pleas, Tuscarawas County, granting summary judgment in favor of Plaintiff-Appellee Mid-Ohio Emergency Physicians, LLC ("Mid-Ohio"), in a breach of contract action. The relevant facts leading to this appeal are as follows.

**{¶2}** Appellant THTC is a hospital located in Dennison, Ohio. In the summer of 2010, the provider of emergency medicine services to the hospital terminated its relationship. As a result, in December 2010, Twin City Hospital Corporation, the predecessor to Appellant THTC, entered into an "Agreement for Emergency Department Management Services" with Appellee Mid-Ohio.

**{¶3}** Appellant THTC subsequently acquired the assets of the former Twin City Hospital. On or about January 17, 2012, appellant adopted and ratified the aforesaid agreement for emergency department management services.

**{¶4}** Item B.7.i. of the agreement, which addresses the practitioner recruiting fee(s), is at the center of the present dispute. It reads as follows:

Recruiting Fee Upon Termination. Upon termination of this Agreement for any reason, Hospital agrees to pay Partnership a one-time recruiting fee for any practitioners recruited by Partnership and who become staff members of Hospital during the term of this Agreement (i.e., excludes practitioners who were already on staff when this Agreement was executed), as follows:

$25,000.00 for physicians

Any amounts paid by Hospital for signing bonuses under 7.k. below, will be credited against amounts owed for this recruiting fee.

**{¶5}** The above section makes reference to Item B.7.k. of the agreement, which reads in pertinent part as follows:

Signing Bonuses. During the term of this Agreement, Hospital agrees to reimburse Partnership for mutually agreed upon signing bonuses and buy-outs expended to attract new physicians to staff Hospital's emergency department, payable as incurred and invoiced to Hospital by Partnership, not to exceed $20,000 per physician ***.

**{¶6}** Also of importance is Item B.14, which directs that the agreement "*** shall be construed in accordance with the laws of the State of Michigan."

**{¶7}** During 2011 and part of 2012, Appellee Mid-Ohio recruited sixteen physicians who were then admitted to the medical staff of the hospital. On August 1, 2012, Appellant THTC terminated its agreement with appellee, giving a ninety-day written notice of termination, for an effective termination date of October 31, 2012.

**{¶8}** On or about December 11, 2012, Appellee Mid-Ohio purportedly submitted an invoice to Appellant THTC in the amount of $388,000.00. This was calculated on the basis of sixteen recruited physicians times a fee of $25,000.00 per physician, minus a single $12,000.00 signing bonus previously paid, for a total amount of $388,000.00 (*i.e.*, (16 x $25,000.00) - $12,000.00). Appellant THTC refused to pay the invoice, essentially asserting that the agreement called for a single termination fee of $25,000.00.

{¶9} On December 3, 2013, Appellee Mid-Ohio filed a complaint against Appellant THTC in the Tuscarawas County Court of Common Pleas. The complaint, which was subsequently amended on July 15, 2014, sought monetary damages against appellant for an alleged breach of contract, with a jury demand. Appellant filed answers to the complaint and amended complaint, alleging *inter alia* that the agreement language was ambiguous.

{¶10} On December 5, 2014, appellee filed a motion for summary judgment, including a supporting affidavit of its affiliate's regional director, Craig A. Rosenberg, M.D. Appellant thereafter filed a memorandum in opposition to appellee's motion for summary judgment, supported by affidavits of THTC's interim CEO, Frank V. Swinehart, and its president, Joseph J. Mitchell.

{¶11} Via a judgment entry filed on February 20, 2015, the trial court entered summary judgment in favor of appellee in the amount of $388,000.00 plus interest.

{¶12} On March 20, 2015, Appellant THTC filed a notice of appeal. It herein raises the following two Assignments of Error:

{¶13} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING SUMMARY JUDGMENT; GENUINE ISSUES OF MATERIAL FACT EXISTED NECESSITATING A TRIAL ON THE MERITS.

{¶14} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THAT THE DISPUTED PROVISION OF THE SUBJECT AGREEMENT, PARAGRAPH B.7.i, IS CLEAR AND EVIDENT ON ITS FACE."

I., II.

{¶15} In its First and Second Assignments of Error, Appellant THTC contends the trial court erred in granting summary judgment in favor of Appellee Mid-Ohio in the breach of contract action, specifically concerning the trial court's conclusion that the pertinent agreement language is unambiguous. We agree.

{¶16} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *See Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56(C) which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor***."

{¶17} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the

non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

**{¶18}** As we previously suggested, Michigan contract law should be applied in our analysis herein. The decision of the Eighth District Court of Appeals in *Westgate Ford Truck Sales, Inc. v. Ford Motor Co.*, 2012-Ohio-1942, 971 N.E.2d 967 (8th Dist.), is instructive in this regard. The *Westgate* court first noted that "[a]ccording to Michigan law, the court's primary obligation in interpreting a contract is to determine the intent of the contracting parties." *Id.* at ¶ 14, citing *Quality Prod. & Concepts Co. v. Nagel Precision, Inc.,* 469 Mich. 362, 375, 666 N.W.2d 251 (2003). Furthermore, "[a] contract is construed as a matter of law 'if the language * * * is clear and unambiguous.' " *Id.*, citing *Quality Prod. & Concepts Co.* at 375, 666 N.W.2d 251. Conversely, "the meaning of an ambiguous contract is a question of fact that must be decided by the jury." *Id.*, citing *Klapp v. United Ins. Group Agency, Inc.,* 468 Mich. 459, 469, 663 N.W.2d 447 (2003) (internal quotes omitted). Additionally, "[a]mbiguity exists when the provision is 'capable of conflicting interpretations.' " *Id., citing Klapp at* 467, 663 N.W.2d 447.

**{¶19}** The Michigan Supreme Court has also long held: "Where a contract is to be construed by its terms alone, it is the duty of the court to interpret it; but, where its meaning is obscure and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the

jury, under proper instructions." *Hewett Grocery Co. v. Biddle Purchasing Co.*, 289 Mich. 225, 236, 286 N.W. 221 (1939) (internal citations omitted).

**{¶20}** The primary question before us in the case *sub judice* is this: Can we presently, within the four corners of the document, interpret with reasonable certainty whether Item B.7.i. of the agreement means a $25,000.00 single fee payable to appellee upon termination of the contract, or instead means the accrual of a $25,000.00 fee for each physician recruited, to be deferred as a final lump sum payment?

**{¶21}** Appellant, in support of the former view, directs us to language in B.7.i. such as "one-time recruiting fee" and the use of the plural term "practitioners" and plural "physicians." Appellant also contends the word "any" could be construed as a modifier of the type or group of practitioners (*e.g.*, recruited physicians) for which a $25,000.00 one-time recruiting fee is payable. Appellee, in support of the latter view, responds *inter alia* that B.7.i. simply provides a formula to be used at termination of the agreement to calculate the sum owed to appellee for its services in recruiting physicians during the corresponding period of time. Appellee also encourages us to consider the relationship between B.7.i. and the subsequent B.7.k., to the effect that any amounts paid for signing bonuses will be credited against "amounts owed" for the recruiting fee. Appellee urges that under this interpretation, it is guaranteed under B.7.k. to earn at least a $5,000.00 recruiting fee per physician, with the potential of $25,000.00 per physician. However, appellant counters that it would still be reasonably possible to find the parties were also attempting via B.7.i and B.7.k. to agree to a total "cap" of up to $25,000.00 worth of signing bonuses.

**{¶22}** We must also bear in mind that Michigan, like Ohio, recognizes the general rule that ambiguities are to be construed against the drafter of the contract. *Herweyer v. Clark Hwy. Services, Inc.,* 455 Mich. 14, 22, 564 N.W. 2d (1997); *Cf. Holderman v. Huntington Leasing Co.* (1984), 19 Ohio App.3d 132, 134, 483 N.E.2d 175, citing *Monnett v. Monnett* (1888), 46 Ohio St. 30, 34–35, 17 N.E. 659. In this instance, it appears undisputed appellee was the drafter, and while it would seem to make sense from a business perspective for appellee to be paid for each physician recruited (albeit, oddly, not until the end of the entire contractual relationship), appellee could have much more clearly said so versus using the language we find set forth in B.7.i. As such, we answer our earlier "primary question" in the negative, and, pursuant to the rule set forth by the Michigan Supreme Court in *Hewett Grocery*, *supra*, we hold the portion of the parties' agreement captioned as B.7.i. is ambiguous as a matter of law and the action must be submitted to a jury.

**{¶23}** The trial court therefore erred in granting summary judgment in favor of appellee.[1] Appellant's First and Second Assignments are sustained.

---

[1] Both sides in the present appeal have provided well-articulated references in the briefs to the Civ.R. 56 materials in the trial court record, particularly the various affidavits. Based on our present holding, we find recitation of this information unnecessary in this opinion.

**{¶24}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is hereby reversed and remanded for further proceedings.

By: Wise, J.

Hoffman, P. J., and

Farmer, J., concur.

JWW/d 1109